JOINTLY SUBMITTED
[COUNSEL LISTED ON SIGNATURE PAGES]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JONGERIUS PANORAMIC TECHNOLOGIES, LLC<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE INC. AND APPLE, INC.<br><br>Defendants. | **Case Number: C 12-03797 YGR**<br><br>**JOINT STATEMENT OF DISCOVERY AND CASE MANAGEMENT ISSUES**<br><br>**Hon. Yvonne Gonzalez Rogers** |

Plaintiff Jongerius Panoramic Technologies, LLC ("JPT" or "Plaintiff"), Defendant Google Inc. ("Google"), and Defendant Apple Inc. ("Apple") (collectively "Defendants") submit this JOINT STATEMENT ON DISCOVERY AND CASE MANAGEMENT ISSUES pursuant to the Court's order that was issued at the October 22, 2012 Rule 16(f) conference. The parties outline below their respective positions regarding: (1) the scope of Defendants' Phase I production obligations; (2) the identification of individuals on Google's initial disclosures; (3) the bifurcation of discovery related to damages; (4) the scheduling of motions for summary judgment of noninfringement; and (5) specific provisions in the Parties' Protective Order. Google's and Apple's [Proposed] opposed Order to Bifurcate Damages Discovery and Leave to File Summary Judgment Briefing Regarding Non-Infringement is attached as Exhibit E.

**Plaintiff's Statement:**

I.      Phase I Document Production

Plaintiff reads the transcript of the October 22, 2012 Case Management Conference [Doc. No. 115] (hereinafter "CMC Transcript") as requiring Defendants' Phase I document production to include critical documents for all of the issues raised in the case, including technical and non-technical issues.  At the Case Management Conference, the parties outlined their disagreements regarding the production of non-email, electronically stored information (ESI).  Defendants proposed limiting its search for relevant, non-email ESI to 5 custodians.  Counsel for Plaintiff argued that Defendants could not possibly make a production of all relevant, non-email ESI in response to Rule 34 document requests by searching the records of 5 custodians.  At this point in the hearing, counsel for Apple proposed (for the first time) a phased approach for production, which initially centered on technical documents (*see, e.g.*, CMC Transcript, 21:16-26).  Counsel for Apple characterized the purpose of the Phase I production: "the intent of producing documents sufficient to reflect everything relevant about the – ***so that there would be precious little left to do***."  Counsel for Plaintiff then responded to Apple's proposal by pointing out that many categories of documents outside of the technical realm are also critical to the case, and would not be adequately addressed if the first phase of production were limited to technical documents:

```
13        MR. CAMMACK:  WELL, YOUR HONOR, THEY -- I MEAN, IT'S
14   NOT JUST -- YOU KNOW, THIS -- OUR CASE IS NOT JUST DEPENDENT
15   ON THE MAP'S FUNCTIONALITY THAT -- IF THERE ARE A FEW PEOPLE
16   THAT HAVE THAT FUNCTIONALITY, THERE'S ALSO GOING TO BE A FEW
17   PEOPLE THAT HAVE ACCOUNTING, A FEW PEOPLE THAT HAVE MARKETING,
18   A FEW PEOPLE THAT HAVE CONTRACTS.
```

CMC Transcript, 22:13-18.

The Court then asked both defendants how long it would take them to make a "first set of

```
3         MR. BRAHMA:  I THINK WE CAN STAGGER IT.  I WOULD ROLL
4    IT OUT -- I THINK WE CAN MAKE A FIRST PRODUCTION IN 30 DAYS OF
5    MAYBE SOME OF CRITICAL TECHNOLOGY DOCUMENTS AND THEN MAYBE
6    SOME OF THE OTHER DOCUMENTS WITHIN THE 60 DAYS AS
7    MR. BATCHELDER MENTIONED.
```

productions for critical documents *in terms of what you think are the issues*." CMC Transcript, 23:23-25. Plaintiff understood this to mean a production of "critical documents" for all of "the issues," and not just "technical issues." Counsel for Google apparently shared Plaintiff's interpretation of the scope of the Phase I production, as counsel for Google represented to the Court:

CMC Transcript, 24:3-7 (emphasis added). Finally, in an effort to be as certain as possible, counsel for Plaintiff requested clarification regarding the scope of the parties' Phase I production, and the Court confirmed Plaintiff's current understanding:

```
21        MR. CAMMACK:  I BELIEVE SO, YOUR HONOR.  JUST SO I'M
22   IN TOTAL UNDERSTANDING BEFORE WE LEAVE, WE'RE GOING TO --
23   INFORMATION BEYOND THE PHASE ONE DISCOVERY, WE WILL -- WE WILL
24   DISCUSS THAT AS -- IF NEEDED AT THE DECEMBER 17TH HEARING.
25   AND AS OF -- AS OF RIGHT NOW, THE PARTIES WILL DISCLOSE OR
1    PRODUCE WHAT INFORMATION THEY HAVE THAT THEY FEEL IS RELEVANT
2    TO THE CASE WITHIN THE NEXT 60 DAYS.
3         THE COURT:  RIGHT.
```

CMC Transcript, 28:21 – 29:3 (emphasis added). Based on the foregoing, Plaintiff understood that Defendants would make a production of both critical technical and non-technical documents by December 21, 2012. To date, Plaintiff has yet to receive any documents from Defendants.

Limiting Defendants' December 21, 2012 production to technical documents makes little sense in view of Local Patent Rule 3-4. Prior to the CMC hearing, Defendants had already agreed to make their Local Patent Rule 3-4 production of technical documents by January 11, 2012. Thus, Defendants' interpretation of their Phase I production is largely meaningless as it simply advances by 20 days Defendants' deadline to produce technical documents. Most importantly, however, Defendants' refusal to include non-technical documents in their Phase I production does nothing to resolve the parties' outstanding disagreement regarding Defendants' proposal to limit production of non-email ESI to 5 custodians.

**Joint Statement of Discovery Issues**

Page **3 of 25**

**Case No. C 12-03797 YGR**

In addition, after the October 22, 2012 CMC, the parties met in the attorney lounge to discuss the scope of the Phase I production, at which time Defendants offered to provide Plaintiff with a "proffer" of the categories of documents Apple was willing to collect.  In the spirit of cooperation, the parties met and conferred telephonically on November 8, 2012, at which time JPT offered to provide Defendants with the categories of documents it deemed critical to the case and that should be produced in Defendants' Phase I production.  The undersigned provided that list of documents (attached as Exhibit A hereto) on November 20, 2012.  Plaintiff pointed out that regardless of the parties' dispute regarding the scope of the Phase I production, the documents categories listed in Exhibit A are clearly relevant to the case and would be required to be produced by Defendants at some point.  Plaintiff also offered to extend the December 21, 2012 deadline to complete the Phase I production, provided that Defendants would simply agree to produce the documents identified in Exhibit A.  To date, Defendants have not indicated whether they are agreeable to producing the categories of documents identified in Exhibit A.  Nor have Defendants made a "proffer" of documents they are willing to produce.

II.     <u>Defendants' Request to Bifurcate Discovery and for Early Summary Judgment</u>

On December 3, 2012 (six weeks after the CMC), Google proposed filing an early summary judgment motion regarding non-infringement.  The basis of Google's proposed motion is without merit.  Indeed, Google's position disregards the plain meaning of the claim terms, and is a classic example of attempting to limit the claims to a preferred embodiment.

At this time it appears that Google is seeking to move for summary judgment on the claim limitation "indicating on said map … said area of said detail view" of claim 1 (and related limitations of other asserted claims).  Google claims that Plaintiff's infringement contentions fail to show this limitation, but that is simply not the case.  Specifically, the detailed claim charts provided by Plaintiff are replete with screen shots demonstrating that, for Google Street View, the "pegman" positioned on the map and oriented to face a particular direction clearly ***indicates*** in the map view the area that is being shown in the detailed view.  For Google Art Project and

Map Maker, a "fan" emanating from the origin of the map view clearly ***indicates*** the area that is being shown in the detailed view.

Plaintiff addressed these very issues in a November 30 letter to Google, a copy of which is attached hereto as Exhibit B. Plaintiff stated in this letter its belief that Plaintiff's infringement contentions were sufficient, but nevertheless offered to supplement the contentions with the detail provided in the letter. In any event, it appears that Google claims that the map view must contain a "highlighted sector in the map image." This position would improperly limit the claims to a preferred embodiment of the specification despite the broader claim language, and would render multiple dependent claims superfluous in violation of the doctrine of claim differentiation (e.g. claims 11, 12, 18, 19, 24, 25). But even if Google were correct, Google Map Maker, Google Art Project, and all accused Apple products would still infringe because they do in fact contain a highlighted sector in the map image. Thus, contrary to Google's position, the claim constructions at issue are not case dispositive.

At 5:00 p.m. on the date this pleading was to be filed, Apple indicated for the first time its intention to file a motion for summary judgment regarding the "synchronizer" limitations of the asserted claims. Contrary to Apple's assertions, when a user of the Apple accused Maps application changes the area shown in the detailed view by panning, the map view synchronously changes to indicate in the map view the new area being shown in the detailed view.[1]

Because Google's and Apple's positions are without merit, there is no reason to bifurcate discovery. Moreover, the suggestion to bifurcate discovery was made by Apple and Google on December 3, 2012, just one week ago. The Defendants' new proposal to bifurcate is contrary to all previous discussions and agreements regarding discovery, including those made at the October 22 CMC. The new proposal is also contrary to the document production schedule agreed to by the parties in the proposed Docket Control Order ("DCO") [Doc. No. 119.1], which states that the "***parties shall produce documents relevant to their respective claims and***

---

[1] To the extent Google and Apple are requesting permission to deviate from this Court's standing order regarding summary judgment motions – either the procedure for filing such motions or the limitation on the number of such motions, Plaintiff opposes Google's request

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**

*defenses*" by December 21, 2012.  There is no distinction in the DCO regarding the nature of the "relevant" documents to be produced (i.e., technical, licensing, damages, etc.).  Finally, Defendants' proposal to postpone its production of non-technical documents until after the claim construction ruling is incompatible with the current discovery deadline (60 days after a Claim Construction Order) and the current deadline to submit expert reports (90 days after a Claim Construction Order).  Indeed, even if Defendants could produce all relevant damages documents within 30 days of a claim construction / summary judgment ruling, the remaining 30 days prior to the proposed discovery deadline would not afford Plaintiff (and its experts) sufficient time to analyze Defendants' document production and obtain necessary deposition discovery.  Nor would Plaintiff have adequate time to address any document production issues with the Court.

### III.  Google's Deficient Rule 26(a)(1) Disclosures

Google's Rule 26(a)(1) Disclosures (attached as Exhibit C) are deficient.  Google's disclosures list only one Google representative by name, and list "a corporate representative to be determined" regarding other topics.[2]  JPT notified Google on November 19, 2012 that its disclosures under Rule 26(a)(1)(A)(i) were deficient for failing to disclose "the name and, if known, the address and telephone number of each *individual* likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses…" Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added).

To date, Google has refused to provide any update regarding their deficient disclosures, citing the "early stage of the case," despite having had almost 10 months to determine the identity of the appropriate individuals since the original action was filed.  JPT therefore requests that the Court order Google to immediately supplement its initial disclosures with the names of actual persons with relevant knowledge.

### IV.  Protective Order

---

[2] For the categories of "Financial Information relating to Google Street View and related applications and third party implementations" and "Information regarding agreements with third parties concerning the use of Google Street View and related applications and third-party implementations" Google did not identify any "individual," but rather only identified "a corporate representative to be determined."

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**

A copy of the draft protective order is attached as Exhibit D.  The remaining issues primarily stem from Defendants insistence on deviating from the Court's standard protective order, in ways that Plaintiff does not believe to be reasonable.  To the extent that outstanding issues remain, Plaintiff asks that the Court adopt the portion of the protective order that is highlighted in blue, and reject the portion of the protective order highlighted in red.  Alternatively, Plaintiff is agreeable to entry of the Court's standard protective order for patent cases.

**Defendant Google's Statement:**

**A.    JPT's Deficient Infringement Claims Against Google and Google's Related Request for Early Resolution of Noninfringement and Bifurcation of Damages Discovery**

JPT's Infringement Contentions are internally inconsistent and facially deficient, and those deficiencies are at the root of Google's and JPT's discovery disputes.  In particular, JPT's Infringement Contentions do not identify any feature of the Google accused products that "indicat[e] on said map … said area of said detailed view," as required by each asserted independent claim (claims 1, 10, 17, and 23) of U.S. Patent No. 6,563,529 ("the '529 patent").

Representative claim 1 covers a method for displaying a detailed view of an area within a territory that requires performing the step of "indicating on said map . . . said area of said detailed view, thereby providing, on said map, an indication of said angular direction and said area of said detailed view as seen from said location within said territory."  *See* Exhibit A to JPT's Infringement Contentions ("Exhibit A") at 11.  JPT's infringement contentions make clear what portion of the map it contends is the "area of said detailed view":  the two-dimensional sector from the point of origin and the boundary(ies) of the map that shows the angle subtended by the detailed image.

The portion of the map that represents the area and angular direction detailed view is noticeably brighter on the iOS Devices using iOS Maps.



*See* Exhibit D to JPT's Infringement Contentions at 8.

But JPT's infringement contentions relating to Google's accused products do not describe how any of those products is used to "indicat[e] … said area of said detailed view."  For instance, JPT's claim chart for Google Street View only asserts that "[t]he arrow below 'pegman' indicat[es] *the angular direction* relative to true north."[3]  *See id*.  JPT's contentions with respect to claims 10, 17 and 23 and regarding Google Map Maker and Google Art Project are similarly deficient.  Accordingly, as required by Patent L. R. 3-1(c), JPT has failed to identify "specifically where each limitation of each asserted claim is found within" the Google products.

In response to Google's December 3 letter identifying these deficiencies, JPT backpedaled, contending  that just by indicating angular direction, Google's accused products also indicated the "area" of the detailed view:

- "Google Street View indicates the change in angular direction by changing the direction of the arrow below pegman, and indicates a change in the area by changing the direction the pegman is facing, resulting in an indication of the area of the detailed view as seen from the pegman's location and facing the same direction as pegman;" and

- "the area is indicated by the direction the pegman is facing and pegman's location on the map;"

JPT's attempt to revise its infringement contentions to patch the hole in its argument is unavailing, as JPT's contentions rely upon a clearly erroneous claim construction that renders explicit claim language superfluous, ignores the patent specification, and is inconsistent with JPT's infringement contentions relating to other accused products.

The claim language clearly requires "indicating on said map said angular direction <u>and</u>

---

3  JPT's Infringement Contentions for claim 10 and 17 repeat the language of the claim limitation in stating that "an arrow (or other indication) emanating from below the pegman on map of territory indicates the area of the territory and the angular direction of the perspective of the detailed view of the area within the territory."  *See, e.g., Creagri, Inc. v. Pinnaclife Inc., LLC*, No. 2012 WL 5389775 at *4 (N.D.Cal. Nov. 2, 2012) (finding that Patent L.R. 3.1 requires more than mere repetition of claim language to contend infringement).  But when pointing to the actual image taken from Google Street View, JPT's contention contradict that parroting statement by asserting only that "[t]he arrow below 'pegman' indicat[es] *the angular direction* relative to true north," not the claimed *area* of the area within the territory shown in the detailed view.  *Id.* at 21.

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**

said area of said detailed view." *See e.g.,* the '529 patent at claim 1 (emphasis added).  Thus, the "angular direction" and "area" of the detailed view are separate and distinct limitations of the claims at issue.  In contending that in Google Street View the area of the detailed view is indicated because the angular direction of the detailed view is shown by the arrow below the pegman icon, JPT  conflates angular direction and area and reduces them to a single claim element.

Also, JPT itself contends that the "area" of the detailed view, in its infringement contentions relating to the accused Apple iOS Maps application, is the two-dimensional sector of the map outlined in the dashed red line below:[4]

The portion of the map that represents the area and angular direction detailed view is noticeably brighter on the iOS Devices using iOS Maps.



---

4  Defendant Apple does not concede that the inclusion of this two-dimension sector in the accused iOS application qualifies as "indicating on said map said angular direction and said area of said detailed view."

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**

*See* Exhibit D to JPT's Infringement Contentions at 8.  Nowhere in JPT's infringement contentions does it identify anything in any of Google's accused products that indicates that two-dimensional area of the detailed view.[5]

Consistent with JPT's contention that the sector in the map must show the area and angular direction, the patent specification of the '529 patent clearly defines the invention as including an indicator that showed not only the angular direction, but also the area of the detailed view being depicted in the panoramic image.   *See* the '529 patent at abstract ("A detailed view window displays a portion of the map image, taken from a point in the site.  A highlighted sector in the map image represents the viewing position, direction, and field of view that the detailed view window displays.")  The rest of the specification consistently refers to indicating the area, not just the angular direction, of the detailed view on the map.  *See, e.g.*, Col. 3, ll. 40-46 ("an improved method for showing a detailed field of view of a panoramic image and a map of the area covered by the panoramic image that indicates the direction *and area* over which the detailed field of view is taken").  Moreover, during the prosecution of the application that led to the '529 patent, the applicant defined the invention as including "a highlighted sector in the map image [that] shows the point from which the detailed view is taken (the camera location) and the direction and angle subtended by the detailed view."  *See* December 3, 2002 Response to Office Action at 6.

While Google has a number of other noninfringement arguments, the resolution of this issue in Google's favor would be case dispositive.  Moreover, because the "indication" limitation necessarily deals with visible features of Google's publicly available products, JPT does not need technical discovery from Google to determine whether the "indicating … said area" limitation of claim 1 and corresponding limitations of the other asserted claims are met.  This case-dispositive noninfringement issue is ready for resolution immediately upon the Court's construction of the

---

5  To the extent, JPT asserts that the highlighted sector in Google Map Maker represents the area of the detailed view, it does not correspond to the actual "area of said detailed view" as claimed in the '529 patent.  If one used Google Map Maker to zoom in on any of the detailed view images shown in JPT's Infringement Contentions, the "sector" does not change in size or shape even though a smaller "area" is shown in the "detailed view."

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**

relevant claim term(s), and it makes sense for the Court to resolve this issue before the parties engage in burdensome and needless discovery on claims of infringement that are likely to fail. Accordingly, Google requests that the Court grant Google leave to file, concurrent with the parties' *Markman* briefing, a discrete, but dispositive, motion[6] for summary judgment of noninfringement based on limitations related to the "indicating on said map . . . said area of said detailed view" claim language.  Further, to the extent the Court grants Apple leave to file its motion for summary judgment of noninfringement, Google seeks to move on the basis of those related "synchronization" and "changes" that are "simultaneously indicated" limitations as well, since the "area of said detailed view" is a necessary component of such limitations.

Google also requests that the Court defer damages discovery until it has ruled on this motion.  Google should not be forced to produce damages-related documents for accused products that JPT cannot, in good faith, allege infringe.  And, as discussed below in Section B, the damages discovery JPT seeks is (unjustifiably) extensive.  The Court has broad discretion and the inherent power to manage the timing and scope of discovery.  *MedImmune, LLC v. PDL Biopharma, Inc.*, No. C 08-5590 JF (HRL), 2010 WL 3636211, at *2 (N.D. Cal. Sept. 14, 2010) (deferring damages discovery until after dispositive motion practice and observing that the Court may avail itself of its inherent power to manage the timing as well as the scope of discovery). In *MedImmune*, the Court found that the damages discovery at issue was tenuous to the present stage of the litigation because it related to damages and stayed such discovery until after it decided dispositive motions related to the defendant's infringement claims.  Further, because the Court's ruling has the potential to dispose of the entire case against Google, staging discovery such that damages discovery does not commence until after the Court's ruling best serves the interests of economy in discovery and eliminates the possibility of costly discovery and expert analysis concerning products or services that may not be relevant after the Court's ruling of Google's discrete summary judgment motion.  Moreover, as no trial date has been set,

---

6  Google further asks that if the Court permits Google to file this narrow motion, but later denies the motion, Google be permitted to file a separate dispositive motion on other  issues at the end of discovery.

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**

1    JPT would not be prejudiced by being denied the opportunity to take such damages discovery in

2    the unlikely event that this Court finds its infringement contentions can survive summary

3    judgment.

4        **B.      Google's December 21, 2012 Document Production and Initial Disclosures**

5        Google is producing relevant, non-privileged, technical documents related to the accused

6    features of Google Street View, Google Map Maker, and Google Art Project on December 21,

7    2012.  Further, to the extent the parties agree, or the Court rules, on the source code provisions of

8    the Parties Protective Order, Google intends to make the relevant portions of its source code

9    available for inspection.  This technical information is more than sufficient to allow JPT to fully

10   attempt to defend its infringement positions.  Indeed, despite being directly asked by Google,

11   JPT cannot identify a single relevant feature of the accused Google products that is not fully

12   explained from the publicly available versions of those products and the corresponding source

13   code.

14       JPT's infringement contentions are clearly deficient and should not survive summary

15   judgment.  As the Court explained at the parties initial case management conference, discovery

16   should be phased so that the defendants first produce fundamental documents that are "critical"

17   to the merits of JPT's claims.  *See* October 22, 2012 Hearing Tr. at 23:23-25  The discovery to

18   date raises serious doubts about the viability of JPT's claims—doubts that should be resolved

19   before further discovery on damages issues is permitted.  Under these circumstances, it does not

20   make sense for Google to expend the cost and resources to produce documents and witnesses

21   related to damages issues for products that clearly do not infringe.  Instead, the parties should

22   focus on the technical discovery necessary to test (and ultimately reject) JPT's claims.

23       JPT's complaint about Google initial disclosures is also without merit.  Google has fully

24   complied with its present obligation to provide initial disclosures under Rule 26.  Under the

25   Federal Rules, Google was only required to disclose individuals it "may use to support its claims

26   and defenses" in its initial disclosures, not (as JPT contends) every individual likely to have

27   discoverable information.  *See* Fed. R. Civ. P. 26(a).  Google identified Daniel Filip as

28

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**

knowledgeable about the "structure, characteristics, operation, and development of Google Street View and related applications and related third-party implementations."  Google also intends to supplement its disclosures by December 21, 2012, to identify individuals knowledgeable about the structure, characteristics, operation, and development of Google Map Maker and Google Art Project—accused products first identified in JPT's infringement contentions of November 5, 2012.  But because JPT's deficient infringement contentions raise doubts about what accused products Google may need to defend, it is not clear which individuals Google may need to rely upon to present evidence about damages-related topics.  That information will only become clear once the Court has resolved which Google accused products JPT can maintain its infringement claims against.

### C.      Protective Order

Google joins in Apple's statement regarding the parties' proposed Protective Order.

### Defendant Apple's Statement:

### A.        Apple's December 21, 2012 Document Production

Apple will begin production of relevant, non-privileged, technical documents related to the accused features of the "Maps" application as installed on iPod Touch, iPhone, and iPad devices installed with iOS versions 2.2 through 5.1.1, pursuant to the Parties' Protective Order (*see* Section C below) on December 21.  This is in accordance with the phased approach proposed by the Defendants in their October 15, 2012 Joint Case Management Statement[7] and adopted by the Court:

---

[7] "Defendants propose phasing ESI discovery pursuant to the Federal Circuit's Model Order Regarding E-Discovery.  Specifically, Defendants propose phasing custodial searches to occur after the initial production of technical documentation about the accused instrumentalities."  (D.I. 110 at 9.)

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**

**MR. BATCHELDER:** AND, YOUR HONOR, I CAN RESPOND.
17 THE -- THE DEFENDANTS PROPOSE A PHASED APPROACH TO
18 ELECTRONIC INFORMATION DISCOVERY, SO THE FIRST WOULD BE A
19 PRODUCTION OF THE TECHNICAL DOCUMENTS THAT REALLY GET AT THE
20 ACCUSED FUNCTIONALITY. SO WE WOULD PRODUCE THAT -- BOTH
21 DEFENDANTS WOULD PRODUCE THAT TO PLAINTIFFS IN THE FIRST PHASE
22 AND WOULD REALLY DO SO WITH THE INTENT OF PRODUCING DOCUMENTS
23 SUFFICIENT TO REFLECT EVERYTHING RELEVANT ABOUT THE -- SO THAT
24 THERE WOULD BE PRECIOUS LITTLE LEFT TO DO.
25 AND THEN WE WOULD PROPOSE THAT THE SAME ESI-RELATED

22
1 PROVISIONS FROM THE MODEL ORDER BE USED FOR REMAINING
2 DISCOVERY BUT WITH THE IMPORTANT CAVEAT THAT WE MEET AND
3 CONFER ALONG THE WAY AND, OF COURSE, AGREE TO EXCEPTIONS AND
4 INCREASE LIMITS IF THEY MAKE SENSE.
5 BUT WHAT -- WHAT DOESN'T MAKE SENSE, PARTICULARLY FOR A
6 COMPANY LIKE APPLE THAT STORES MOST OF ITS DOCUMENTS
7 ELECTRONICALLY AND NOT ON A CENTRALIZED DATABASE, IS TO GET A
8 REQUEST FOR, YOU KNOW, ALL DOCUMENTS RELATING TO MAPS, WHICH
9 WOULD BE, YOU KNOW, DISPERSED THROUGHOUT THE COMPANY. THERE
10 ARE A FEW PEOPLE THAT OWN THE COMPUTERS THAT -- THAT HOUSE THE
11 DOCUMENTS RELATED TO THE FUNCTIONALITY THAT MATTERS HERE. AND
12 THOSE ARE THE FOLKS THAT WE SHOULD GO TO.

**MR. CAMMACK:** WELL, YOUR HONOR, THEY -- I MEAN, IT'S
14 NOT JUST -- YOU KNOW, THIS -- OUR CASE IS NOT JUST DEPENDENT
15 ON THE MAP'S FUNCTIONALITY THAT -- IF THERE ARE A FEW PEOPLE
16 THAT HAVE THAT FUNCTIONALITY, THERE'S ALSO GOING TO BE A FEW
17 PEOPLE THAT HAVE ACCOUNTING, A FEW PEOPLE THAT HAVE MARKETING,
18 A FEW PEOPLE THAT HAVE CONTRACTS.
19 I MEAN, PART OF THIS -- THIS -- THE REASON THAT BOTH
20 GOOGLE AND APPLE IN THE POST-AMERICA-INVENTS-ACT WORLD ARE IN
21 THE SAME CASE IS BECAUSE SOME OF THE APPLE ACCUSED PRODUCTS
22 ARE USING GOOGLE TECHNOLOGY. SO THERE'S A -- THERE ARE
23 SEVERAL DIFFERENT GROUPS WITHIN EACH OF THESE COMPANIES THAT
24 ARE IMPLICATED, AND LIMITING THE PLAINTIFF TO FIVE -- TO
25 SEARCH FIVE PEOPLE I THINK IS -- IS UNDULY LIMITING OUR
1 ABILITY TO PROVE OUR CASE.

**THE COURT:** WELL, YOU MISSED MY LECTURE ABOUT
3 DISCOVERY. YOUR CO-COUNSEL WAS HERE. WHAT I SAID IN A NUT
4 SHELL IS THAT I KEEP DISCOVERY BECAUSE I DON'T LIKE
5 GAMES-PLAYING AND I LIKE TO KNOW WHO'S DOING WHAT THEY'RE
6 SUPPOSED TO DO UNDER THE PROFESSIONAL RULES AND WHO'S NOT.
7 MY APPROACH, I THINK, WOULD BE TO START OFF IN THE PHASED
8 APPROACH, TO HAVE YOU BACK HERE, AND IF THINGS AREN'T WORKING,
9 TO LET ME KNOW.

Apple will also be prepared to produce licenses and agreements between Google and

Apple relating to the Street View functionality.  Further, to the extent the parties agree or the

Court rules, Apple will also be prepared to begin making relevant portions of its source code

available for inspection.[8]  Apple, however, disputes that it is obligated to produce the vast, and

---

[8] Apple will be making its production available on a secure, standalone source code computer, pursuant to the terms

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**

seemingly exhaustive list of documents that Plaintiff has informally requested by December 21 (*see* "JPT List of Documents for Phase I Production," attached as Exhibit A).  Plaintiff's list of "Phase I" documents goes far beyond what the parties discussed at the October 22, 2012 Hearing, and indeed is so extensive that it is difficult to imagine what may be left over for "Phase II."  Moreover, Plaintiff's list is a naked attempt to end run the discovery process by circumventing the need to serve formal document requests and allow Defendants to interpose objections.

### B.       Early Resolution of JPT's Infringement Claims and Bifurcation of Damages Discovery

Like Google, Apple has also identified significant deficiencies in JPT's November 5, 2012 Infringement Contentions.  In particular, JPT's Infringement Contentions do not identify any feature of the Apple accused products that "caus[es] any change in ... said area of said detailed view to be simultaneously indicated by a corresponding change in said indication on said map," as required by asserted independent claim 1 of U.S. Patent No. 6,563,529 ("the '529 patent").  JPT's Infringement Contentions further fail to identify any feature of the Apple accused products that is a "synchronization means for changing, in said map, the ... area ... of said territory shown in said detailed view, said changing occurring in response to and in correspondence with changes in the ... area ... of said territory shown in said detailed view," as required by asserted independent claims 10.  Asserted independent claims 17 and 23 similarly require a "synchronizer" for synchronizing the changes in the detailed view with the area indicated in the map.

For instance, claim 1 requires "any change in said angular direction and said area of said detailed view to be simultaneously indicated by a corresponding change in said indication on

---

of the Protective Order entered in this matter.  The parties have not yet been able to reach agreement as to the location of that computer (Apple and Google propose making their respective computers available at outside counsels' offices in East Palo Alto; Apple's and Google's computers will be conveniently located in the same business complex, if so).  Apple will need at least 10 days notice in order to set up the computer for the first time. As such, if the parties are able to agree by no later than December 11, 2012 as to where the computer will be located, Apple will be able to begin making its relevant code available starting December 21.  Apple is on company-wide shutdown between December 21 and January 2, 2013, so if production is not possible by December 21, the next earliest date that inspection can begin is likely January 7.

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**

said map." *See* JPT's Infringement Contentions, Exhibit D at 7.  JPT's infringement contentions generally assert that "[w]hen the angular direction and area of the detailed view is changed, the angular direction and the view of the area are changed substantially simultaneously with the indication on the map," but there is no evidence to indicate that any change to the detailed view area will result in a substantially simultaneous change to the area indicated in the corresponding map.  Simply put, even a visual inspection of the accused functionality demonstrates that a necessary claim limitation is entirely missing from the Street View feature of Apple's accused Maps application.  For example, when the field of view (and hence, the area) of the detailed view is modified, there is no substantially simultaneous change to the area indicated in the map view.

JPT's contentions are similarly deficient with respect to claims 10, 17 and 23, each of which contains a similar synchronization limitation.  *Id.* at 13, 26 and 35.  Accordingly, as required by Patent L. R. 3-1(c), JPT has failed to identify "specifically where each limitation of each asserted claim is found within" the accused Apple products.

Accordingly, Apple requests that the Court grant leave for and first resolve a discrete, but dispositive, motion by Apple for summary of judgment of non-infringement based on the related terms "causing any change in ... said area of said detailed view to be simultaneously indicated by a corresponding change in said indication on said map" (claim 1), "synchronization means for changing, in said map, the … area ... of said territory shown in said detailed view ... in response to and in correspondence with changes in the … area … of said territory shown in said detailed view" (claim 10), "a synchronizer for changing, in said map, the … area … shown in said detailed view in response to and in correspondence with changes in said … area … shown in said detailed view" (claims 17 and 23).  In the interests of resolving this matter efficiently and expeditiously, Apple joins Google in requesting that it be permitted to file this motion concurrently with the parties' scheduled briefing regarding claim construction.

Apple further joins Google in requesting that the Court defer damages discovery until it has ruled on this motion.  Because Apple believes that the issue it plans to raise in an early summary judgment motion has the strong potential of being case dispositive, it is reasonable to

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**

defer damages discovery until such time that the Court has had opportunity to consider and rule upon Apple's non-infringement contentions. However, should the Court determine that bifurcation of damages is not appropriate, Apple is prepared to promptly produce financial documents, including summary documents, sufficient to show sales and revenue information for devices shipped with the accused functionality.

### C.   Protective Order

Google and Apple have worked together with Plaintiff to resolve many of the disputes relating to the Protective Order, including the exchange of multiple drafts and participation in a lengthy meet and confer on December 8, 2012. However, a few areas of dispute still remain (*see* red/blue version of the Stipulated Protective Order Regarding Disclosure and Use of Discovery Materials, attached hereto as Exhibit D). Defendants request that the Court resolve the disputes as to the sections below and enter the resulting Protective Order prior to the aforementioned document production and source code inspection on December 21.

Section 7.4(a)(2) – Defendants believe that Experts retained by any party in this action should have a continuing obligation to report changes in their employment status or expert or consulting engagements to the opposing party. Defendants believe such protections are necessary to ensure that, subsequent to an expert's disclosure and during the pendency of this litigation, such expert does not enter into a new employment or consulting agreement that would be reasonable grounds for objection if disclosed prior to such expert's initial approval.

Section 8.A – Defendants believe that the prosecution bar should apply to any person receiving access to any Protected Information (whether "Confidential", "Highly Confidential – Attorneys' Eyes Only" or "Highly Confidential Source Code"). Any confidential information about Defendants' products, the accused functionalities and Defendants' business may inform how a prosecuting attorney addresses claim scope while distinguishing prior art and amending claims. *Shared Memory Graphics, LLC v. Apple Inc.*, 2010 WL 4704420, *3 (N.D. Cal. Nov. 12, 2010) ("While it is true that patent claims cannot be broadened in reexamination, the Court is not convinced that that fact is dispositive to the issue. Claims may still be restructured in

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**

1    reexamination, and, in a given case, a patent owner may well choose to restructure claims in a

2    manner informed by the alleged infringer's confidential information gleaned from litigation.").

3    JPT has offered no valid basis to suggest that some information is not "confidential enough" to

4    warrant the protection of a prosecution bar.

5          Section 8.B – Defendants believe that the prosecution bar should also include activities

6    relating to participating in, advising on, or counseling on the acquisition of patents, patent

7    applications, or the right to sublicense any such patent or patent applications.  JPT is a non-

8    practicing patent assertion entity.  *See* www.empireipllc.com.  JPT's corporate parent, Empire IP

9    LLC ("Empire IP"), is the predecessor-in-interest to the patent-in-suit.  Defendants understand

10   that JPT and Empire IP share the same principals, Daniel Mitry and Timothy Salmon.  Empire IP

11   is in the business of acquiring patents and filing lawsuits to collect licensing revenues, and

12   indeed has been a serial litigant against Apple.  Here, Empire IP acquired the patent-in-suit,

13   assigned it to a wholly owned subsidiary LLC sharing the same management, and sued Apple

14   and Google for alleged infringement.  This suit will give JPT, Empire IP, its counsel, and its

15   experts, access to Apple's and Google's confidential and sensitive information which is no doubt

16   useful to future acquisition, licensing, and litigation decisions.

17        An attorney or expert cannot both view highly confidential information of a defendant

18   and be involved in the acquisition or prosecution of patents in the same technological field.  *See,*

19   *e.g., Infosint S.A.*, 2007 WL 1467784, at *3–4; *Nike, Inc. v. Adidas America Inc.*, No. 9:06–cv–3

20   (E.D. Tex. 2006) (Doc. No. 58); *Autotech Techs. Ltd. P'ship*, 237 F.R.D. at 410–11; Intel Corp.

21   v. VIA Techs., Inc., 198 F.R.D. 525, 529–31 (N.D. Cal. 2000).  In *ST Sales Tech Holdings*, the

22   plaintiff's attorney was denied access to confidential information because he was "in the

23   business of acquiring patents and asserting them against allegedly infringing companies" and

24   therefore a "competitive decision maker." 2008 WL 5634214 (E.D. Tex., March 14, 2008).

25   Similarly, in *Nike v. Adidas America, Inc.*, an E.D. Tex. court denied two in-house counsel

26   access to confidential information because they were "making important litigation strategy

27   decisions, settlement options, including licensing agreements" and would be put in the

28

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**

"untenable position of having to refuse [their client] legal advice . . . lest they indirectly reveal" information.  *Nike, Inc. v. Adidas America Inc.*, No. 9:06–cv–43 (E.D.Tex.2006) (Giblin, J.)(Doc. No. 58).

Most importantly, two recent cases involving Empire IP plainly recognize the appropriateness of an acquisition bar.  In *E-Contact Technologies, LLC v. Apple Inc.*, 1:11-cv-426-LED-KFG (E.D. Tex. June 19, 2012), an E.D. Tex. case involving both Empire IP—as the principal behind E-Contact—Apple, and Google, the court recognized that Empire IP's business model and the sensitive nature of Apple's confidential information warranted the extra protections of an acquisition bar.  And finally, in *Rotatable Technologies LLC v. Nokia Inc,* 2:12-cv-265-JRG-RSP, the plaintiff—another LLC formed by Empire IP—expressly agreed to an acquisition bar in the Agreed Protective Order.

Section 8.C – Defendants do not believe that JPT's attorneys of record for this litigation should be allowed to participate in any proceeding before the USPTO "for the purpose of defending the validity and/or enforceability of issued claims" and the restrictions on amending and/or drafting claims do not alleviate these concerns.  As a practical matter, Defendants do not understand how an attorney who is involved in a proceeding before the USPTO will be able to defend the validity and/or enforceability of a claim while walling him or herself from the drafting and/or amending of claims.

Moreover, in a proceeding before the USPTO, the patent owner may make any amendment or add new claims to overcome the prior art, as long as the scope of the original claims is not enlarged.  35 U.S.C. § 314.  Even though claims can only be narrowed during these proceedings, JPT could surrender some claim scope to overcome rejections while trying at the same time to ensure that the amended claim is still broad enough to cover Apple's products.  If the prosecution bar did not include defending the validity and/or enforceability of the issued claims, "[plaintiff's] litigation counsel would be in the untenable position of distinguishing prior art in a manner that will take advantage of what they know about [defendant'] products and will inexorably influence" any proceedings before the USPTO.  *MicroUnity Sys. Eng'g, Inc. v. Dell,*

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**

*Inc., et al.*, 2005 WL 2299455 (.D. Tex. Aug. 1, 2005); *see also Shared Memory Graphics,* 2010 WL 4704420.

<u>Section 9(c)</u> – Defendants have offered to make available all source code at the East Palo Alto offices of their respective outside counsel.  Apple's outside counsel, Ropes & Gray LLP, and Google's outside counsel, Greenberg Traurig LLP, are located in the same office building within this judicial district.  The accommodations were made to ensure a minimum amount of travel and inconvenience for JPT's counsel and experts while ensuring the necessary security of the Defendants' most highly sensitive materials.  This Court and Empire IP have both previously agreed that the offices of a Defendants' outside counsel is an appropriate location to maintain source code for inspection by the plaintiff.  *See*, *e.g., SmartData, S.A. v. Apple Inc.*, Case No. 12-cv- 00583-YGR, D.I. 31 (N.D. Cal. Oct. 10, 2012) (Gonzalez-Rogers, J.); *E-Contact Technologies, LLC v. Apple Inc.*, 1:11-cv-426-LED-KFG D.I. 351 (E.D. Tex. July 5, 2012) (involving an Empire IP-related entity); *Rotatable Technologies LLC v. Nokia Inc,* 2:12-cv-265-JRG-RSP D.I. 49 (E.D. Tex. Sep. 27, 2012) (involving an Empire IP-related entity).

This Court also has previously adopted the Defendants' positions from Section 9(c) regarding note-taking and recordable media in the source code room.  *See, e.g., SmartData, S.A. v. Apple Inc.*, Case No. 12-cv-00583-YGR (N.D. Cal.) (restricting reviewers from bringing recordable media, including cellular telephones into the Source Code review room and from copying any portion of the Source Code into their notes).  Such precautions are necessary to ensure that the Defendants' most highly sensitive information is not compromised during the review.

<u>Section 9(d)</u> – Defendants believe that reasonable limits on the printing of source code are necessary for this litigation.  Such protections are necessary for the confidentiality of the source code and permits reasonable accountability for the viewing and printing of Defendants' most highly sensitive information.  This Court previously has recognized the importance of such limits.  *See e.g., SmartData, S.A. v. Apple Inc.*, Case No. 12-cv- 00583-YGR, D.I. 31 (N.D. Cal. Oct. 10, 2012) (Gonzalez-Rogers, J.) (limiting plaintiff to 10 continuous pages).  Other courts

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**

have also recognized the necessity of such constraints with plaintiffs related to Empire IP. *E-Contact Technologies, LLC v. Apple Inc.*, 1:11-cv-426-LED-KFG D.I. 344 *slip op* (E.D. Tex. June 19, 2012) (holding that constraints permitting the Empire IP-related plaintiff to print no more than 10 continuous pages were appropriate given the sensitive nature of defendants' source code). Finally, Empire IP itself agreed to printing constraints in other cases. *See, e.g., Rotatable Technologies LLC v. Nokia Inc,* 2:12-cv-265-JRG-RSP D.I. 49 (E.D. Tex. Sep. 27, 2012) (involving an Empire IP-related entity that agreed to a 50-page printing limit).

Section 9(f) – Given the highly sensitive nature of Defendants' source code, it is important that any copies are maintained at all times in a secure fashion. Allowing JPT to store and maintain any such printouts in an unsecure manner obviates all the prior protections put into place to secure the confidentiality and protection of Defendants' code.

Section 9(h) – It is common practice in cases involving source code to maintain a log of persons who get access to source code. Section 9(h) simply lays out the rules governing such logs, including the reasonable advance disclosure of who will be accessing the source code to allow the Producing Party time and opportunity to prepare for the review.

Section 9(i) – Defendants believe that Section 9(i) should be adopted by this court to ensure that proper provisions for maintaining the condition of the Source Code room are in place. This section simply lays out the parties' respective responsibilities for removing notes and other information from the Source Code room to avoid any future disputes over the condition of the room. For example, Defendants should not be in the position of determining whether any documents left in the review room by JPT's expert are important notes and/or work product that may not be thrown in the trash.

Section 9(j) –Defendants believe that allowing the plaintiff to make multiple copies of source code for transportation and dissemination at a deposition risks obviating the security procedures agreed to regarding the Defendants' source code. Each additional printout of the source code that is disseminated raises the spectre that some of Defendants' most highly sensitive information will inadvertently be disclosed improperly or accidently misplaced.

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**

Defendants' proposal allows for JPT's counsel to maintain and transport its personal copy of the source code pages for preparation before a deposition, while ensuring that all other copies of the code that will be used during a given deposition are maintained and secured by the defendants' own counsel.  This compromise effectively balances the Plaintiff's needs to reasonably prosecute its case with Defendants' interest in securing the confidentiality and security of its sensitive information.

Dated: December 10, 2012             /s/ *Decker A. Cammack (with permission)*
                                     Counsel for Jongerius Panoramic Technologies, LLC

                                     Brent N. Bumgardner (appearing *pro hac vice*)
                                     Decker A. Cammack (appearing *pro hac vice*)
                                     Nelson Bumgardner Casto, P.C.
                                     3131 West 7th Street, Suite 300
                                     Fort Worth, Texas 76107
                                     Telephone:    817.377.3488
                                     Facsimile:    817.377.3485
                                     bbumgardner@nbclaw.net
                                     dcammack@nbclaw.net

                                     Robert W. Hicks (Cal. Bar No. 168049)
                                     Kenneth R. Wright (Cal. Bar No. 176325)
                                     ROBERT W. HICKS & ASSOCIATES
                                     14435 Big Basin Way, Suite 151
                                     Saratoga, CA 95070
                                     Telephone: (619) 846-4333
                                     Facsimile: (408) 624-9369
                                     rhicks@rwhlaw.com
                                     kwright@rwhlaw.com

                                     Attorneys for Plaintiff and Counter-Defendant
                                     JONGERIUS PANORAMIC TECHNOLOGIES, LLC

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**

1

2

3
Dated: December 10, 2012          /s/ *James R. Batchelder*
                                  ―――――――――――――――――――――
                                  Counsel for Apple Inc.
4

5                                 JAMES R. BATCHELDER
                                  ROPES & GRAY LLP
6                                 1900 University Ave, 6th Floor
                                  East Palo Alto, CA  94303
7                                 Telephone:    650-617-4000
                                  Facsimile:    650-617-4090
8                                 james.batchelder@ropesgray.com

9                                 KHUE V. HOANG
10                                JOSEF B. SCHENKER (pro hac vice)
                                  ROPES & GRAY LLP
11                                1211 Avenue of the Americas
                                  New York, NY  10036
12                                Telephone:    212-596-9000
                                  Facsimile:    212-596-9090
13                                khue.hoang@ropesgray.com
14                                josef.schenker@ropesgray.com

15                                PAUL M. SCHOENHARD (pro hac vice)
16                                ROPES & GRAY LLP
                                  One Metro Center
17                                700 12th Street, NW, Suite 900
                                  Washington, DC 20005-3948
18                                Telephone:    202-508-4600
                                  Facsimile:    202-508-4650
19                                paul.schoenhard@ropesgray.com

20
Dated: December 10, 2012          /s/ *Charanjit Brahma (with permission)*
                                  ―――――――――――――――――――――
21                                Counsel for Google Inc.

22                                Charanjit Brahma (Cal. Bar. No. 204771)
23                                Kakoli Caprihan (pro hac vice)
                                  Jack Lin (pro hac vice)
24                                Jim W. Fang (pro hac vice)
                                  GREENBERG TRAURIG, LLP
25                                2101 L Street NW, Suite 1000
                                  Washington, DC 20037
26                                (202) 331-3100

27

28

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Scott J. Bornstein (pro hac vice)
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, NY 10166
(212) 801-9200

Vera Ranieri (Cal. Bar No. 271594)
GREENBERG TRAURIG, LLP
4 Embarcadero Center, Suite 3000
San Francisco, CA 94111-5983
(415) 655-1300

**Joint Statement of Discovery Issues**

**Case No. C 12-03797 YGR**